**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA and PEOPLE OF THE VIRGIN ISLANDS** | * |
| | * |
| | * |
| v. | * |
| | * |
| **GERARD CASTOR, SR. [1], JULITO FRANCIS [2], and JOHN WOODS [3],** | * |
| **Defendants.** | * |

CRIMINAL NO. 31 - 2015

(Conspiracy, 18 U.S.C. § 371; Bribery, 18 U.S.C. § 666(a); Extortion Under the Color of Official Right; 18 U.S.C. § 1951; Honest Services Wire Fraud, 18 U.S.C. §§ 1343 & 1346; Aiding and Abetting, 18 U.S.C. § 2; Perjury, 18 U.S.C. § 1623; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c))

*******

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

<u>GENERAL ALLEGATIONS</u>

All dates and times in this Indictment are alleged to be "on or about" the specific date stated. At all times relevant in this Indictment:

1.     **GERARD CASTOR** was the president and primary proprietor of Balbo Construction Corporation, a construction company operating in the United States Virgin Islands (USVI). **CASTOR** is a private citizen residing in St. Thomas, USVI.

2.     **JULITO FRANCIS** served as Director of Finance and Administration for the Virgin Islands Public Finance Authority (VIPFA) from in or about 2007 through in or about 2011, **FRANCIS** served as Executive Director of the Virgin Islands Next Generation Network (VINGN) from in or about February 2011 through in or about October 2011.

1

3.     **JOHN PERCY WOODS** was co-principal of Company A, an architectural design partnership operating in the USVI. Various entities within the Government of the Virgin Islands, including the VIPFA, hired Company A and **WOODS** to manage and perform architectural services for various government construction projects. **WOODS** was an agent of the Government of the Virgin Islands, and was authorized to act on behalf of the Government of the Virgin Islands.

4.     The VIPFA was a component of the Government of the Virgin Islands. In all years relevant to this Indictment, the Government of the Virgin Islands received benefits in excess of $10,000 under a Federal program.

5.     The VIPFA was responsible for awarding and funding the St. Thomas Regional Library construction contract, and other contracts, all of which exceeded $5,000 in value.

## COUNT ONE
(Conspiracy, 18 U.S.C. § 371)

6.     The allegations contained in Paragraphs 1 through 5 of this Indictment are realleged as though fully set forth herein.

7.   From in or about January 2008 through in or about January 2015, at St. Thomas, in the District of the Virgin Islands and elsewhere, the defendants,

**GERARD CASTOR,**
**JULITO FRANCIS, and**
**JOHN WOODS**

did knowingly and willfully conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, that is:

a.     for defendant **CASTOR** to corruptly give, offer, and agree to give any thing of value to any person, with intent to influence and reward an agent of an organization or of a State,

local, or Indian tribal government, or any agency thereof, in connection with any business,

transaction, and series of transactions of such organization, government, or agency involving any

thing of value of $5,000 or more, in violation of 18 U.S.C. § 666(a)(2); and defendants

**FRANCIS** and **WOODS** being agents of the Government of the Virgin Islands, to corruptly

solicit and demand for the benefit of any person, accept and agree to accept, any thing of value

from any person, intending to be influenced and rewarded in connection with any business,

transaction, and series of transactions of such organization, government, or agency involving any

thing of value of $5,000 or more, including but not limited to the St. Thomas Regional Library

construction contract, St. Thomas Regional Library contract change orders and addenda, in

violation of 18 U.S.C. § 666(a)(1)(B).

### Purpose of the Conspiracy

8.    The purpose of the conspiracy was for Defendants **CASTOR**, **FRANCIS**, and

**WOODS** to personally enrich themselves, by using defendants **FRANCIS'** and **WOODS'**

positions of power to influence the process of awarding, maintaining, and paying for lucrative

government business, and directing such influence to benefit defendant **CASTOR** in exchange

for defendant **CASTOR** providing things of value to defendants **FRANCIS** and **WOODS**, and

to conceal the conspiracy.

### Manner and Means of the Conspiracy

9.  The conspiracy was carried out through the following manner and means:

a.     Defendants **FRANCIS** and **WOODS** agreed and intended to take and did

in fact take official action, including recommending, selecting and designating defendant

**CASTOR**'s business, Balbo Construction Corporation, as a recipient for official contracts

awarded, in whole or in part, by the VIPFA, and assisting Balbo Construction Corporation in

3

keeping the contracts when defendant **CASTOR** failed to meet contract requirements.

        b.      Defendant **CASTOR** provided defendants **FRANCIS** and **WOODS** things of value, in the form of free and heavily discounted home construction, labor, and materials worth over $400,000. Defendant **CASTOR** constructed bedrooms, a pool, pool room, and deck for defendant **FRANCIS'** personal residence. Defendant **CASTOR** improved defendant **WOODS'** driveway and provided him with free materials and labor to do so.

        c.      In his capacity as Director of Finance and Administration for the VIPFA, defendant **FRANCIS** took official acts and used official influence to ensure that defendant **CASTOR** and Balbo Construction Corporation received favorable treatment for contracts awarded, in whole or in part, by the VIPFA.

        d.      In his role as a lead architect at Company A, and acting as a contracted advisor for the VIPFA, defendant **WOODS** took official acts and used official influence to ensure that defendant **CASTOR** and Balbo Construction Corporation received favorable treatment for contracts awarded, in whole or in part, by the VIPFA.

        e.      As a consequence of defendant **FRANCIS'** influence in his capacity as Director of Finance and Administration, and defendant **WOODS'** influence in his capacity as advisor to the VIPFA and lead architect and engineer, defendant **CASTOR** and Balbo Construction Corporation received VIPFA contracts worth over $17,000,000.

        f.      Defendants **CASTOR, FRANCIS,** and **WOODS** attempted to conceal and did conceal their crimes by, among other things, creating documents falsely suggesting that defendant **FRANCIS** and defendant **WOODS** intended to pay defendant **CASTOR** in full for the work performed, and that their arrangements were consistent with a bona fide debt.

4

<u>Overt Acts</u>

10.     In furtherance of the conspiracy and to effect the objects thereof, the defendants and/or other co-conspirators known and unknown to the Grand Jury committed the following overt acts, among others, at St. Thomas, in the District of the Virgin Islands and elsewhere:

*Bribes Paid by defendant **CASTOR** to defendant **FRANCIS***

a.     On or about January 18, 2008, defendant **CASTOR**, in his capacity as President of Balbo Construction Corporation, submitted a proposal "to furnish all labor, materials, tools and equipment to complete Renovation" of Parcel No. 1B-29 Estate Solberg, St. Thomas, USVI, a property owned at the time by defendant **FRANCIS**, for an estimated cost of $342,500.00.

b.     On or about September 7, 2008, between the date of the VIPFA Evaluation Committee meeting to assess bids on the St. Thomas Regional Library contract and the date defendant **FRANCIS** recommended defendant **CASTOR** receive the Library contract, defendant **CASTOR** and Balbo Construction Corporation began performing construction services at the personal residence of defendant **FRANCIS**.

c.     Between in or about September 2008, and through at least in or about October 2010, Balbo Construction Corporation performed construction services at the personal residence of defendant **FRANCIS** valued at over $400,000.  The construction services included, but were not limited to, the addition of bedrooms, a pool, deck, and pool room.

*Bribes Paid by Defendant **CASTOR** to Defendant **WOODS***

d.     In or about June 2007, defendant **CASTOR** and Balbo Construction Corporation began performing construction services at the personal residence of defendant **WOODS**.

5

e. From in or about June 2007 through in or about the end of July 2010, Balbo Construction Corporation performed construction services at the personal residence of defendant **WOODS**. The construction services included, but were not limited to, labor for the addition of a driveway and the supply of materials for the construction of the driveway.

*The "Service Agreement" between Balbo Construction Corporation and VIPFA*

f. On or about August 28, 2008, defendant **CASTOR** and defendant **FRANCIS** signed a one-page contract (the "Service Agreement") obligating the VIPFA to pay Balbo Construction Corporation for cleaning and maintenance services, at a rate of $37,000 per annum, or $3,083.34 per month.

g. On or about August 13, 2008, defendant **CASTOR**, in his capacity as President of Balbo Construction Corporation, submitted an invoice for $20,246.70 to defendant **FRANCIS** and the VIPFA. The invoice cited work performed by Balbo Construction Corporation at the VIPFA offices between January 14, 2008 and July 30, 2008. Defendant **FRANCIS** approved payment of the invoice through his signature.

h. On or about August 26, 2008, pursuant to an invoice submitted by defendant **CASTOR**, the VIPFA and defendant **FRANCIS** issued a check for $20,246.70, directed to Balbo Construction Corporation.

i. On or about August 29, 2008, defendant **CASTOR** and Balbo Construction Corporation deposited a check from the VIPFA for $20,246.70 in a Balbo Construction Corporation account at Banco Popular, N.A.

j. Defendant **CASTOR** submitted the following invoices, and defendant **FRANCIS** signed checks on behalf of the VIPFA to ensure payment to Balbo Construction Corporation under the Service Agreement:

6

| Date of Balbo Construction Corporation Invoice submitted by defendant **CASTOR** | Period covered by defendant **CASTOR**'s Balbo Construction Corporation Invoice | Amount of defendant **CASTOR**'s Balbo Construction Corporation Invoice | Date of VIPFA Check signed by defendant **FRANCIS** to Balbo Construction Corporation | Amount of VIPFA Check to Balbo Construction Corporation |
|---|---|---|---|---|
| October 30, 2008 | August 1-October 31, 2008 | $9,250.10 | October 30, 2008 | $9,250.10 |
| February 20, 2009 | November 1, 2008-January 31, 2009 | $9,250.10 | February 24, 2009 | $9,250.10 |
| March 19, 2009 | February 1-28, 2009 | $3,083.34 | March 19, 2009 | $3,083.34 |
| April 6, 2009 | March 1-31, 2009 | $3,083.34 | April 7, 2009 | $3,083.34 |
| May 12, 2009 | April 1-30, 2009 | $3,083.34 | May 18, 2009 | $3,083.34 |
| June 8, 2009 | May 1-31, 2009 | $3,083.34 | June 9, 2009 | $3,083.34 |
| July 7, 2009 | June 1-30, 2009 | $3,083.34 | July 13, 2009 | $3,083.34 |
| August 11, 2009 | July 1-31, 2009 | $3,083.34 | August 19, 2009 | $3,083.34 |
| September 8, 2009 | August 1-31, 2009 | $3,083.34 | September 14, 2009 | $3,083.34 |
| October 6, 2009 | September 1-30, 2009 | $3,083.34 | October 15, 2009 | $3,083.34 |
| December 22, 2009 | October 1-31, 2009 | $3,083.34 | December 24, 2009 | $3,083.34 |
| December 22, 2009 | November 1-30, 2009 | $3,083.34 | December 24, 2009 | $3,083.34 |
| January 7, 2010 | December 1-31, 2009 | $3,083.34 | January 13, 2010 | $3,083.34 |
| March 4, 2010 | January 1-February 28, 2010 | $6,166.68 | March 10, 2010 | $6,166.68 |
| April 15, 2010 | March 1-31, 2010 | $3,083.34 | April 16,2010 | $3,083.34 |
| June 7, 2010 | April 1-30, 2010 | $3,083.34 | June 10, 2010 | $3,083.34 |

7

| June 7, 2010 | May 1-31, 2010 | $3,083.34 | June 11, 2010 | $3,083.34 |
| July 7, 2010 | June 1-30, 2010 | $3,083.34 | N/A | N/A |
| September 2, 2010 | July 1-31, 2010 | $3,083.34 | September 13, 2010 | $3,083.34 |
| September 2, 2010 | August 1-31, 2010 | $3,083.34 | September 13, 2010 | $3,083.34 |
| October 20, 2010 | September 1-31, 2010 | $3,083.34 | November 4, 2010 | $3,083.34 |

*The St. Thomas Regional Library Contract*

k.      On or about June 16, 2008, the VIPFA issued a "Request for Proposals" for bidding on the St. Thomas Regional Library construction contract. The Request for Proposals included plans and specifications drawn up for VIPFA by Company A and defendant **WOODS**.

l.      On or about August 19, 2008, defendant **FRANCIS** and the VIPFA received a proposed bid for construction services on the St. Thomas Regional Library from Balbo Construction Corporation, signed by defendant **CASTOR**.

m.      On or about August 19, 2008, defendant **WOODS** was present to open the St. Thomas Regional Library bids, including the bid submitted by defendant **CASTOR**.

n.      On or about August 25, 2008, defendant **WOODS** and Company A authored a letter summarizing the St. Thomas Regional Library bids for the VIPFA. Defendant **FRANCIS** authorized Company A to organize an Evaluation Committee for the contracts, and to prepare an evaluation matrix for the use of the Committee.

o.      On or about August 28, 2008, Defendants **FRANCIS** and **WOODS** attended a meeting of the VIPFA Evaluation Committee where the proposed bids for

8

construction services on the St. Thomas Regional Library were discussed.

        p.      On or about August 29, 2008, defendant **FRANCIS**, sent an email from his VIPFA account to several members of the evaluation team, including defendant **WOODS**, requesting that his name be removed from the August 29, 2008 Company A letter listing the participants in the Evaluation Committee meeting.

        q.      On or about September 9, 2008, defendant **FRANCIS** composed a memorandum to the Board of Directors of the VIPFA, conveying the Evaluation Committee's recommendation of Balbo Construction Corporation to construct the St. Thomas Regional Library.

        r.      On or about September 9, 2008, defendant **FRANCIS** attended a meeting of the Board of Directors of the VIPFA, and recommended that the Board of Directors approve the award of the St. Thomas Regional Library construction contract to the Balbo Construction Corporation.

        s.      On or about October 31, 2008, defendant **FRANCIS** composed a memorandum to the Board of Directors of the VIPFA, conveying the Evaluation Committee's recommendation of Balbo Construction Corporation to construct the St. Thomas Regional Library.

        t.      On or about October 31, 2008, defendant **FRANCIS** attended a meeting of the Board of Directors of the VIPFA, and recommended that the Board of Directors approve the award of the St. Thomas Regional Library construction contract to the Balbo Construction Corporation.

        u.      On or about November 14, 2008, defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, and defendant **CASTOR**, in his capacity

as president of Balbo Construction Corporation, signed a contract giving Balbo Construction Corporation the right to construct the St. Thomas Regional Library.

        v.      On or about November 20, 2008, defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, sent defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, a "Notice to Proceed" and "Authorization to Commence Work" on the St. Thomas Regional Library construction contract.

        w.      On or about January 11, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, transmitted to defendant **FRANCIS**, through defendant **WOODS** with the approval of defendant **WOODS**, three proposed addenda to the St. Thomas Regional Library contract, which increased the value of the contract by $3,049,342.26.

        x.      On or about February 4, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, and defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, signed a "Supplemental Contract" agreeing to pay Balbo Construction Corporation an additional $2,500,000 for the scope of work described in "Addenda II and III" to the St. Thomas Regional Library construction contract.

        y.      On or about March 18, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, and defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, signed a "Supplemental Contract" agreeing to pay Balbo Construction Corporation an additional $561,263.36 for the scope of work described in "Addendum I" to the St. Thomas Regional Library construction contract.

        z.      On or about July 13, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, transmitted to defendant **FRANCIS**, through defendant **WOODS**, with the approval of defendant **WOODS**, a proposed "Addendum No. IV"

to the St. Thomas Regional Library contract, which increased the value of the contract by $583,695.00.

        aa.    On or about August 4, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, and defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, signed a "Supplemental Contract" agreeing to pay Balbo Construction Corporation an additional $583,695.00 for the scope of work described in "Addendum IV" to the St. Thomas Regional Library construction contract.

        bb.    On or about July 13, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, transmitted to defendant **FRANCIS**, through defendant **WOODS**, with the approval of defendant **WOODS**, a proposed "Addendum No. V" to the St. Thomas Regional Library contract, which increased the value of the contract by $650,850.47.

        cc.    On or about August 4, 2010, defendant **CASTOR**, in his capacity as president of Balbo Construction Corporation, and defendant **FRANCIS**, in his capacity as Director of Finance and Administration for the VIPFA, signed a "Supplemental Contract" agreeing to pay Balbo Construction Corporation an additional $650,850.47 for the scope of work described in "Addendum V" to the St. Thomas Regional Library construction contract.

        dd.    On or about July 14, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $176,648.18 for the St. Thomas Regional Library construction contract.

        ee.    On or about August 26, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $291,111.05 for the St. Thomas Regional Library construction contract.

ff.     On or about September 22, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $233,786.68 for the St. Thomas Regional Library construction contract.

gg.     On or about October 22, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $200,338.26 for the St. Thomas Regional Library construction contract.

hh.     On or about November 10, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $248,714.02 for the St. Thomas Regional Library construction contract.

ii.     On or about December 10, 2010, VIPFA made payment to defendant **CASTOR's** Balbo Construction Corporation in the amount of $439,014.67 for the St. Thomas Regional Library construction contract.

### *The Payment and Performance Bond*

jj.     In or around June 2008, defendants **FRANCIS** and **WOODS**, through the VIPFA, distributed bid documents for the construction of the St. Thomas Regional Library. The bid documents included the requirement that the successful bidder obtain a 100% Payment and Performance Bond to secure performance of the library contract, and to ensure that the Government of the Virgin Islands was protected in the event of the contractor's failure to perform the contract.

kk.     On or about November 21, 2008, defendant **CASTOR** signed a Request for Mobilization letter on behalf of Balbo Construction Corporation. The letter, addressed to defendant **FRANCIS** and the VIPFA, requested full waiver or reimbursement for any performance and payment bond incurred by Balbo Construction Corporation on the St. Thomas

12

Regional Library construction project.

       ll.    On or about November 21, 2008, Company A submitted a letter to defendant **FRANCIS** and the VIPFA, requesting full waiver of the Payment and Performance Bond requirement on behalf of Balbo Construction.

       mm.    On or about November 21, 2008, defendant **FRANCIS** signed a Notice to Proceed for the St. Thomas Regional Library contract between the VIPFA and Balbo Construction, without requiring Balbo Construction to post a Payment and Performance Bond.

*Miscellaneous Balbo Construction Work*

       nn.    In addition to the St. Thomas Regional Library contract and Service Agreement, on or about November 13, 2008, defendant **FRANCIS** approved an invoice previously submitted by Balbo Construction Corporation, charging the VIPFA $12,000.00 for moving and unloading trailers at a VIPFA facility.

       oo.    On or about November 14, 2008, defendant **FRANCIS** signed a VIPFA check to Balbo Construction Corporation for $12,000.00, to cover moving and unloading trailers at a VIPFA facility.

*Concealment of the Conspiracy*

       pp.    In or about January 2015, more than four years after defendant CASTOR and his company had completed the work on defendant FRANCIS' personal property, and after defendant **FRANCIS** and defendant **CASTOR** had both been contacted by law enforcement agents, they entered into a written agreement under which defendant **FRANCIS** agreed to pay defendant **CASTOR** more than $350,000 in cash and property for defendant **CASTOR's** improvements to defendant **FRANCIS'** property.

       qq.    On or about April 8, 2010, defendant **WOODS** and defendant **CASTOR**

13

created a written agreement providing that **CASTOR** would provide labor for repairs on the driveway at defendant **WOODS'** residence, in exchange for payment of $15,000. Defendant **WOODS** made only one payment to defendant **CASTOR**, in or about December 2011, for $1,500.

        rr.    In or about November 2012, more than two years after defendant **CASTOR** had completed the work on defendant **WOODS'** personal property, defendant **WOODS** sent defendant **CASTOR** a letter purporting to memorialize a new agreement that, instead of paying defendant **CASTOR** money for the construction services provided by defendant **CASTOR,** he would pay defendant **CASTOR** by providing architectural design plans for a new office building.

        ss.    In or about August 2014, more than four years after **CASTOR** completed the known work on defendant **WOODS'** property, and after both defendant **CASTOR** and defendant **WOODS** had been contacted by law enforcement agents, defendant **WOODS** and Company A sent defendant **CASTOR** architectural design plans for a new office building which was never built.

        All in violation of Title 18, United States Code, Section 371.

14

## COUNT TWO
(Receiving a Bribe by a Public Official, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury for the District of the Virgin Islands further charges that:

11.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

12.     From in or about July 2010 through in or about September 2011, at St. Thomas, in the District of the Virgin Islands and elsewhere, the defendant,

## JULITO FRANCIS,

while an agent of the Government of the Virgin Islands, did corruptly solicit, demand, accept, and agree to accept any thing of value from **GERARD CASTOR** with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government, involving any thing of value of $5,000 or more, in that **FRANCIS** accepted construction services on his personal residence in the form of labor, materials, and miscellaneous expenses in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT THREE
(Bribery of a Public Official, 18 U.S.C. § 666(a)(2))

The Grand Jury for the District of the Virgin Islands further charges that:

13.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

14.     From in or about July 2010 through in or about September 2011, at St. Thomas in the District of the Virgin Islands and elsewhere, the defendant,

### GERARD CASTOR,

corruptly gave, offered, and promised to give money and other things of value to **JULITO FRANCIS**, an agent of the Government of the Virgin Islands, with the intent to influence and reward **FRANCIS** in connection with any business, transaction, and series of transactions of the Virgin Islands valued at $5,000 or more, that is, **CASTOR** provided construction services to **FRANCIS** for his personal residence in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 666(a)(2).

16

## COUNT FOUR
(Receiving a Bribe by a Public Official, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury for the District of the Virgin Islands further charges that:

15.        The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

16.        In or about July 2010, at St. Thomas in the District of the Virgin Islands and elsewhere, the defendant,

### JOHN WOODS,

while an agent of the Government of the Virgin Islands, did corruptly solicit, demand, accept, and agree to accept any thing of value from **GERARD CASTOR** with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government, involving any thing of value of $5,000 or more, in that **WOODS** accepted construction services on his personal residence and property in the form of labor, materials, and miscellaneous expenses in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

**COUNT FIVE**
(Bribery of a Public Official, 18 U.S.C. § 666(a)(2))

The Grand Jury for the District of the Virgin Islands further charges that:

17.       The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

18.       In or about July 2010, at St. Thomas, in the District of the Virgin Islands and elsewhere, the defendant,

**GERARD CASTOR,**

corruptly gave, offered, and promised to give money and other things of value to **JOHN WOODS**, an agent of the Government of the Virgin Islands, with the intent to influence and reward **WOODS** in connection with any business, transaction, and series of transactions of the Virgin Islands valued at $5,000 or more, that is, **CASTOR** provided construction services to **WOODS** for his personal residence and property in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 666(a)(2).

## COUNTS SIX THROUGH TEN
(Honest Services Wire Fraud, 18 U.S.C. §§ 1343, 1346 & 2)

The Grand Jury for the District of the Virgin Islands further charges that:

19.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

20.     On or about the dates listed below, at St. Thomas, in the District of the Virgin Islands and elsewhere, the defendants,

**JULITO FRANCIS**
**and**
**GERARD CASTOR,**

did devise and intend to devise a scheme and artifice to defraud and deprive the U.S. Virgin Islands and its citizens of their intangible right to honest services through bribery and kickbacks.

### Execution of the Scheme

21.     On or about the dates listed below, at St. Thomas in the District of the Virgin Islands and elsewhere, Defendants **FRANCIS** and **CASTOR**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, and attempting to do so, sent and caused to be sent by wires in interstate commerce, the following payments:

| Count | Date | Payment |
|-------|------|---------|
| 6 | August 26, 2010 | Payment from VIPFA to defendant **CASTOR's** Balbo Construction Corporation in the amount of $291,111.05 |
| 7 | September 22, 2010 | Payment from VIPFA to defendant **CASTOR's** Balbo Construction Corporation in the amount of $233,786.68 |
| 8 | October 22, 2010 | Payment from VIPFA to defendant **CASTOR's** Balbo Construction Corporation in the amount of $200,338.26 |
| 9 | November 10, 2010 | Payment from VIPFA to defendant **CASTOR's** Balbo Construction Corporation in the amount of $248,714.02 |
| 10 | December 10, 2010 | Payment from VIPFA to defendant **CASTOR's** Balbo Construction Corporation in the amount of $439,014.67 |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT ELEVEN
(Extortion under the Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury for the District of the Virgin Islands further charges that:

22.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

23.     From in or about January 2008 through in or about September 2011, at St, Thomas,  in the District of the Virgin Islands and elsewhere, the defendant,

### JULITO FRANCIS,

did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion under color of official right, and attempt to obstruct, delay, and affect commerce, as those terms are defined in Title 18, United States Code, Section 1951; that is, defendant **FRANCIS**, while acting as Director of Finance and Administration for the VIPFA, engaged in a course of conduct, whereby defendant **FRANCIS** obtained money and property, to wit, construction services for his personal residence and property, from defendant **CASTOR,** in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 1951.

21

## COUNT TWELVE
### (Extortion under the Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury for the District of the Virgin Islands further charges that:

24.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

25.     From in or about January 2008 through in or about July 2011, at St. Thomas, in the District of the Virgin Islands and elsewhere, the defendant,

### JOHN WOODS,

did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion under color of official right, and attempt to obstruct, delay, and affect commerce, as those terms are defined in Title 18, United States Code, Section 1951; that is, defendant **WOODS**, while acting as a contractor, engineer and adviser for the VIPFA, engaged in a course of conduct, whereby defendant **WOODS** obtained money and property, to wit, construction services for his personal residence and property, from defendant **CASTOR**, in exchange for favorable treatment in connection with contracts awarded by the Government of the Virgin Islands.

All in violation of Title 18, United States Code, Section 1951.

22

## COUNT THIRTEEN
(Perjury, 18 U.S.C. § 1623)

The Grand Jury for the District of the Virgin Islands further charges that:

26.     The allegations contained in Paragraphs 1 through 5, and Paragraph 10 of this Indictment are realleged as though fully set forth herein.

27.     On or about July 16, 2015, at St. Thomas, in the District of the Virgin Islands, while under oath and testifying in a proceeding before Grand Jury No. 2014-1, a Grand Jury of the United States in the District of the Virgin Islands, the defendant,

### JULITO FRANCIS

did knowingly make false material declarations as hereinafter set forth.

28.     At the time and place set forth in Paragraph 27 of this Count, the Grand Jury was conducting an investigation to determine whether defendant **FRANCIS** had solicited, demanded, accepted, and agreed to accept things of value in connection with his official action as an agent of the Government of the Virgin Islands; specifically, whether defendant **FRANCIS** and others had used their positions to influence the award of the St. Thomas Regional Library contract to Balbo Construction; and whether **FRANCIS** had been influenced and rewarded in connection with official acts taken related to the St. Thomas Regional Library contract.  It was material to the Grand Jury's investigation to determine the nature, scope, and extent of defendant **FRANCIS'** role in selecting Balbo Construction as the successful bidder for the St. Thomas Regional Library contract.

29.     At the time and place set forth in Paragraph 27 of this Count, defendant **FRANCIS**, appearing voluntarily as a witness under oath at a proceeding before the Grand Jury,

23

was fully advised of his rights and was asked the following questions and gave the following
answers knowing the underscored material declarations to be false:

* * *

Q: So when the Evaluation Committee meeting happened, August 27, or 28,
2008, were you at the Evaluation Committee Meeting?

A: <u>No.</u>

Q: You were not?

A: <u>No.</u>

Q: So how did you learn about what happened at the Evaluation Committee
meeting?

A: <u>Once the evaluation was done, I'd received a letter from Jaredian indicating
that this is the evaluation and these are the scores, based on the evaluation.</u>

* * *

Q: Just to be clear, you were not on the Evaluation Committee, correct?

A: No.

Q: And you only learned about the results of the Evaluation Committee from
Jaredian's letter, correct?

A: <u>That's correct.</u>

* * *

24

30.     The above underscored material declarations, made under oath during the Grand Jury session by defendant **FRANCIS**, were not true, as defendant **FRANCIS** then and there well knew, in that, on or about August 28, 2008, defendant **FRANCIS** attended the VIPFA Evaluation Committee meeting related to the St. Thomas Regional Library project.

All in violation of Title 18, United States Code, Section 1623.

25

## FORFEITURE ALLEGATIONS

The Grand Jury for the District of the Virgin Islands further finds that:

31.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), in the event of the defendants' convictions on any of Counts One through Thirteen of this Indictment.

32.     Upon conviction of any of the offenses set forth in Counts One through Thirteen of this Indictment, the defendants,

**GERARD CASTOR,**
**JULITO FRANCIS,**
**and JOHN WOODS**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to **Parcel No. 1B-29 Estate Solberg, St. Thomas, U.S. Virgin Islands**, and/or a sum of money equal to the amount of proceeds obtained as a result of the offenses, for which the defendants are jointly and severally liable.

33.     If any of the property described above, as a result of any act or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

In accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

27

The Grand Jury returned a TRUE BILL.


Raymond Hulser                                    Ronald W. Sharpe
Chief, Public Integrity Section                   United States Attorney
Criminal Division                                 District of the Virgin Islands
Department of Justice


Laura Fulton                                      Nelson Jones
Justin D. Weitz                                   Assistant United States Attorney
Trial Attorneys


          DISTRICT COURT OF THE VIRGIN ISLANDS:   Returned into the District Court on

this 5th day of August, 2015, by Grand Jurors and filed.


RUTH MILLER
U.S. MAGISTRATE JUDGE

28